Dear District Attorney Hudson,
¶ 0 This office has received your request for an official Opinion in which you asked, in effect, the following question:
Does a county assessor have the authority to contract to sellpublic records that are regularly kept in computer-readableformat to a private business for resale to the public?
 I. THE OFFICE OF COUNTY ASSESSOR IS CREATED BY STATUTE
¶ 1 The office of county assessor is an elective public office created by statute. 68 O.S. 1991, § 2814[68-2814]. Title 68 also states, at Section 2815, that the duty of the county assessor is to "assess all property as provided by law." In carrying out that general duty, the Legislature has established many statutory requirements not germane to the issue of the sale of computer data. The county assessor carries out the statutory duties of collecting information about property, assigning a value to certain property, listing the property, and creating public records of this information. 68 O.S. 1991 and Supp. 1996, §§2814-2846.
 II. POWERS OF THE COUNTY ASSESSOR AND INTERACTION OF THE OKLAHOMA OPEN RECORDS ACT
¶ 2 Generally, the power to make contracts and sell county property is vested in the county, to be exercised by the board of county commissioners. 19 O.S. 1991, § 1[19-1]. There is no specific statutory language allowing the county assessor to sell, or contract to sell, the public records compiled and regularly maintained by the county assessor's office in a computer-readable format, or any other type of property belonging to the assessor's office or the county.
¶ 3 To the contrary, the Legislature recognized that the county assessor would compile records which would be public records, and, by statute, established a specific fee schedule for furnishing copies of these records. 28 O.S. Supp. 1996, § 60[28-60].
The statute distinguishes the fees to be charged for copies of all other records from those to be charged for copies of standard maps made by the county assessor's office. The statute states:
 All county assessors shall charge and collect the following flat fees to be uniform throughout the state, and the county assessor shall not be required to itemize or charge these fees pursuant to any other schedule, except as specifically provided by law:
 For furnishing all records available for copying; in paper form and in a size 81/2" x 14" or smaller, and in one color on white paper, per page the fee shall be as provided in the Oklahoma Open Records Act,
Section 24A.1 et seq. of Title 51 of the Oklahoma Statutes;
 For furnishing standard maps: in paper form and in one color on white paper or blue line, per map and in the following standard sizes when available:
1. `A' size approximately 8 1/2" × 11" $ 5.00
2. `B' size approximately 11" × 17"
`C' size approximately 17"× 22"
`D' size approximately 22" × 34" $ 7.00
3. `E' size approximately 34" × 44" $10.00
28 O.S. Supp. 1996, § 60[28-60] (emphasis added).
¶ 4 The Legislature acknowledged that records in the control or possession of the county assessor are subject to the provisions of the Oklahoma Open Records Act, 51 O.S. 1991 and Supp. 1996,§§ 24A.1 -24A.24 ("the Act"), in the emphasized portion of the above-quoted statute and in the express language of the Act itself at Section 24A.5. The definition of a "public body" in the Act clearly encompasses the office of county assessor. "Public body" is defined in the Open Records Act as:
 [A]ny office, . . . county, . . . or any subdivision thereof, supported in whole or in part by public funds or entrusted with the expenditure of public funds or administering or operating public property, and all committees, or subcommittees thereof.
51 O.S. Supp. 1996, § 24A.3[51-24A.3](2).
¶ 5 The computer-readable records in the possession or control of the county assessor's office are within the definition of a "record" meant to be covered by the Act, since the Act does not limit its application based upon the format of the record. "Record" is defined in the Act, in relevant part, as:
 [A]ll documents, including, but not limited to, any book, paper, photograph, microfilm, data files created by or used with computer software, computer tape, disk, and record . . . or other material regardless of physical form or characteristic, created by, received by, under the authority of, or coming into the custody, control or possession of public officials, public bodies, or their representatives in connection with the transaction of public business, the expenditure of public funds or the administering of public property.
51 O.S. Supp. 1996, § 24A.3[51-24A.3](1) (emphasis added).
¶ 6 The Legislature, by the language in 28 O.S. Supp. 1996, §60[28-60], also contemplated the county assessor's office being asked to furnish copies of documents such as maps in standard map sizes in excess of 81/2" x 14", the largest copy size addressed by the Act. 51 O.S. Supp. 1996, § 24A.5[51-24A.5](3). Computer tapes, disks, and records were already subject to the Act, and thus were not addressed in the specific fees statute for county assessors. 28O.S. Supp. 1996, § 60[28-60].
 III. FEES THAT MAY BE CHARGED UNDER THE OPEN RECORDS ACT
¶ 7 The stated public policy of the Act includes ensuring and facilitating "the public's right of access to and review of government records so they may efficiently and intelligently exercise their inherent political power." 51 O.S. 1991, §24A.2[51-24A.2]. When that public policy is applied to a situation in which the county assessor has no specific statutory authority to contract to sell the public records that are regularly kept in computer-readable format to a private business, the result is clear. The county assessor, if requested to make copies, must follow the provisions of the Act and provide copies; but, the assessor may not sell public records to a private business for fees other than those allowed in the relevant Oklahoma statutes.
¶ 8 Insofar as copying or reproduction fees are concerned, the Act would allow the county assessor to "charge a fee only for recovery of the reasonable, direct costs of document copying, or mechanical reproduction."[1] 51 O.S. Supp. 1996, §24A.5[51-24A.5](3). What "the reasonable, direct costs" are for reproducing these records in this format is a question of fact that cannot be answered in an Attorney General Opinion. 74 O.S.Supp. 1996, § 18b[74-18b](A)(5). The Supreme Court has, however, elaborated upon this standard in Merrill v. Oklahoma TaxCommission, 831 P.2d 634 (Okla. 1992).
¶ 9 In Merrill, the Court examined a request for records in microfiche and computer-readable (computer tape) formats. In elaborating upon the standard of "reasonable, direct costs" in this format, the Court stated that a reproduction or copy charge "based upon the cost of materials [and] labor needed for providing the computer program and service to produce the requested data" was lawful. Merrill, 831 P.2d at 642-43.
¶ 10 In view of the Court's statement in Merrill and the legislative admonition in 51 O.S. Supp. 1996, § 24A.5[51-24A.5](3) that fees, such as reproduction fees, are not to "be used for the purpose of discouraging requests for information or as obstacles to disclosure of requested information," public bodies, such as the office of county assessor, may only recover the cost of materials and labor specifically incurred in reproducing existing computer records in a computer-readable format. In application, this means that a public body could charge a requestor for (1) the storage media used, including disk, tape, or other format unless provided by the requestor; (2) any access or processing charges imposed upon the public body because of the request; (3) any hardware or software specifically required to fulfill the request and reproduce the record in computer-readable format which would not otherwise generally be required or used by the public body; and (4) the cost of labor directly attributable to fulfilling the request. The public body would not, however, be able to charge for (1) hardware or software or a percentage thereof which is otherwise generally required or used by the public body for day-to-day operations; (2) storage, processing or access charges not specifically linked to the request; or (3) maintenance and materials generally required by the public body for day-to-day operations and not directly resulting from the request. In the context of a request for a paper record, this is like a public body being unable to charge for (1) a percentage of the cost of a typewriter or copying machine used to make the copies; (2) the cost of archiving and storing the records; or (3) the cost of fixing a copier which broke while copying a record. Of course, whether these or any other particular charges could be imposed in a given situation, is ultimately a question of fact.
¶ 11 Under Section 24A.5(3) of the Act, a public body such as the county assessor may also charge a search fee[2] in connection with responding to a records request "if the request: (a) is solely for a commercial purpose, or (b) would clearly cause excessive disruption of the public body's essential functions[.]" Whether the request is within either of these categories is a question of fact that cannot be answered in an Attorney General Opinion. 74 O.S. Supp. 1996, § 18b[74-18b](A)(5). TheMerrill case, however, is again instructive in this regard.
¶ 12 In Merrill, the Oklahoma Supreme Court affirmed the trial court's finding that both prerequisites to charging a search fee were present with respect to the records request under review. Merrill, 831 P.2d at 642. The trial court had determined that the requestor intended to use the records in his law practice (commercial purpose) and that employees of the Tax Commission would have to be diverted from their regular jobs to respond to the request because this was the first request the Commission had ever received "for computer-readable copies and there [was] a five-year backlog in developing computer jobs and systems" (excessive disruption). Merrill, 831 P.2d at 642.
¶ 13 Given the holding in Merrill with regard to search fees, it is clear that a public body, such as a county assessor, may charge a search fee in connection with responding to a request if it can be demonstrated that the request "is solely for commercial purpose" or "would clearly cause excessive disruption of the public body's essential functions." 51 O.S. Supp. 1996 §24A.5[51-24A.5](3). Should a public body choose to charge a search fee it should proceed with caution in view of the legislative warning set forth in the Act which provides in pertinent part:
 In no case shall a search fee be charged when the release of said documents is in the public interest, including, but not limited to, release to the news media, scholars, authors and taxpayers seeking to determine whether those entrusted with the affairs of the government are honestly, faithfully, and competently performing their duties as public servants.
51 O.S. Supp. 1996, § 24A.5[51-24A.5](3). (See, e.g., A.G. Opin. 88-35, in which the Attorney General opined that pursuant to the above-quoted language, a search fee may not be charged to a member of the news media.)
¶ 14 Since this office has determined that the county assessor does not have the authority to contract to sell public records that are regularly kept in computer-readable format to a private business, it is unnecessary to consider your question regarding the fee arrangement under that type of sale.
¶ 15 It is, therefore, the official Opinion of the AttorneyGeneral that:
1. A county assessor does not have the authority pursuant to68 O.S. 1991 and Supp. 1996, §§ 2814-2846, 28 O.S. Supp. 1996,§ 60[28-60], or the Open Records Act, 51 O.S. 1991 and Supp. 1996,§§ 24A.1 -24A.24, to contract to sell public records that areregularly kept in computer-readable format to a private businessfor resale to the public. A county assessor may only charge thefees for such records that are set forth in 28 O.S. Supp. 1996,§ 60[28-60] and 51 O.S. Supp. 1996, § 24A.5(3).
2. Insofar as copying or reproduction fees are concerned, acounty assessor, under 51 O.S. Supp. 1996, § 24A.5(3), maycharge a "fee only for recovery of the reasonable, direct costsof [the] mechanical reproduction" of the requestedcomputer-readable records.
3. Additionally, a county assessor, pursuant to 51 O.S. Supp.1996, § 24A.5(3), may charge a search fee in connection withresponding to a request for such records only if the request "issolely for commercial purpose" or "would clearly cause excessivedisruption of the public body's essential functions."
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
VICTOR N. BIRD CHIEF DEPUTY ATTORNEY GENERAL, CIVIL DIVISION
GLEN D. HAMMONDS ASSISTANT ATTORNEY GENERAL
[1] As in the case with all fees charged under the Act, a public body such as a county assessor must "post a written schedule of said fees at its principal office and [file the same] with the county clerk." 51 O.S. Supp. 1996, § 24A.5[51-24A.5](3).
[2] See note 1.